IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY NINER,

    *Plaintiff*,

    *v.*

GARRETT COUNTY PUBLIC WORKS,

    *Defendant*.

Civil Action No. ELH-17-2948

## MEMORANDUM OPINION

In this employment discrimination case, self-represented plaintiff Gary Niner has sued his former employer, "Garrett County Public Works,"[1] under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*  *See* ECF 1 ("Complaint"). Several exhibits are appended to the suit.

Niner avers, *inter alia*, that his "right wrist" was "crushed . . . in 1993 on the job site" and that he was forty-eight years of age on July 14, 2015, when he was terminated from his position as Line Locator.  *Id.* at 5-6.  According to Niner, he was demoted and later terminated based on his disability as well as his age.  ECF 1.  Further, he alleges retaliation under the ADA based on his demotion from Crew Leader to Line Locator.  *Id.*

Defendant has moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for pre-discovery summary judgment (ECF 8), supported by a memorandum of law (ECF 8-1) (collectively, the "Motion") and exhibits.  *See* ECF 8-2 through ECF 8-4.  Niner opposes the Motion (ECF 10, "Opposition"), with exhibits.  *See* ECF 10-1 at 3-

---

[1] The correct name appears to be the "Garrett County Department of Public Works — Utility Division."  *See* ECF 8-1.

21. Defendant has replied. *See* ECF 11 ("Reply").

The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Sause v. Bauer*, ___ U.S. ___, 138 S. Ct. 2561, 2563 (2018); *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, no hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

For the reasons that follow, I shall grant the Motion in part and deny it in part. In particular, I shall grant the Motion as to the ADA claim of unequal terms and conditions of employment. However, I shall deny the Motion as to the ADA claim of retaliation, the ADA claim of disability discrimination, and the ADEA claim.

## I. Factual and Procedural Background[2]

### A.

Niner started working for the Garrett County Department of Public Works — Utility Division ("DPW" or the "County") in 1987. *See* ECF 1-2 at 11-12 (statement of facts appended to the Complaint) at 11.[3] DPW is a department within the Garrett County government. ECF 8-1 at 2. Initially, plaintiff worked as a Laborer. ECF 1-2 at 11. On an unspecified date, he became an Equipment Operator. *Id.*

Niner "was injured on the job" on November 4, 1993. ECF 1-2 at 11. On that date, he "was lifting up a heavy metal tank with a piece of equipment" when the "chain holding the tank wrapped around [his right] wrist and crushed it." *Id.* Niner does not specify when he returned to

---

[2] As discussed, *infra*, in the posture of this case, I must assume the truth of the facts alleged by plaintiff. Also, as discussed, *infra*, I may consider exhibits appended to the suit.

[3] As noted, Niner identified his former employer as "Garrett County Public Works." *See* ECF 1. However, the complete name of his former employer appears to be the "Garrett County Department of Public Works — Utility Division." *See* ECF 8-1.

work.  In February 2001, Niner underwent surgery on his right wrist.  ECF 1-2 at 11.  He returned to work in May 2001, with "restrictions" on the types of work he was able to perform. *Id.*  In particular, Niner was unable to shovel, lift objects weighing more than 20 or 30 pounds, and could not expose his wrist to vibrations.  *Id.*

On an unspecified date, Niner became a Line Locator at DPW.  ECF 1-2 at 11.  Plaintiff does not explain the nature of his responsibilities in that role.  In May 2005, Niner was promoted and received a raise.  *Id.*  Niner's new title was Crew Leader/Line Locator.  *Id.* at 12.[4] According to plaintiff, he was still responsible for his "regular work [as a] Line Locator." *Id.* at 11.  However, he gained new responsibilities with the promotion, including "running jobsites", being "in charge of laborers", and assuring that "the work was being done to specification."  *Id.*

At some point in 2006, Niner gave his "employer" and his supervisor, Ron Harvey, an "updated note" from Dona Alvarez, M.D., "outlining the same restrictions" from 2001: "no vibrating, no shoveling, and no lifting over 30 lbs., sometimes 20 lbs. with [his] right hand." ECF 1-2 at 11.  Then, in 2008, Niner gave his "employer" another note written by Doctor Alvarez, "outlining the same restrictions."  *Id.*  According to Niner, he routinely saw Doctor Alvarez about his wrist injury, and his work "restrictions remained the same throughout the years[.]"  *Id.*

Niner received the "Locator Achievement Award" in 2013, which recognized "the best partners in damage prevention."  ECF 1-2 at 11.  According to Niner, the selection criteria for the Locator Achievement Award included, in part, *id.* at 11-12:

- Locator must have ZERO "at fault" damages.
- Locator must have ZERO safety violations . . . .

---

[4] Niner refers to his title alternately as "Line Locator/Crew Leader" and "Crew Leader/Line Locator."  ECF 1-2 at 12.

- Locator must establish proactive working relationships in damage prevention.

Thereafter, in "the spring of 2014," Harvey, plaintiff's supervisor, "stepped down." ECF 1-2 at 12. Subsequently, Brian King became plaintiff's supervisor. *Id.* It appears that King's title was Assistant Division Chief of Maintenance for DPW. *See id.*

Niner received an "employee evaluation" from King in February 2015. ECF 1-2 at 12. Niner "noticed on [his] evaluation that [his] title had changed from Crew Leader/Line Locator to just Line Locator[.]" *Id.* Niner asked King if he was still a Crew Leader. *Id.* According to plaintiff, King replied: "'I don't know.'" *Id.*

Plaintiff had his "annual follow up appointment with Dr. Alvarez" on February 11, 2015. *Id.* Niner also obtained a note from Doctor Alvarez, reiterating his work restrictions. *Id.* Niner provided his "employer" with the note on or around February 11, 2015. *Id.*

Later in February 2015, Niner was "informed by [his] employer that [he] was scheduled to see their doctor for an evaluation" regarding his right hand and wrist. *Id.* Plaintiff identified the doctor as James Deren. *Id.* According to plaintiff, this was the first time he had been asked to meet with a County physician. *Id.* Plaintiff alleges that a colleague, Thomas Parker, was also injured while working for DPW, but was "never asked to see the county doctor." *Id.* Niner avers that DPW was "looking for excuses to . . . terminate [him] because of [his] disability." *Id.*

On February 26, 2015, Niner met with Lamont Pagenhardt, the Garrett County Administrator, to discuss why he had been asked to meet with Doctor Deren, and why plaintiff's "employee evaluation" indicated his job title had changed. ECF 1-2 at 12. According to Niner, Pagenhardt was unaware that plaintiff's title had changed. Additionally, Pagenhardt reviewed plaintiff's "personnel file", which "still indicated that [Niner] was a Crew Leader." ECF 1-2 at 12.

Plaintiff attended the appointment with Doctor Deren on March 2, 2015. *Id.* The doctor allegedly "asked why [Niner] was there and stated there was no reason for the visit since [Niner's work] restrictions had not changed." *Id.*

On or about March 19, 2015, Niner was "called to the office" for a "meeting." ECF 1-2 at 12. There, he met with Richard Shoemaker, Operations and Maintenance Chief of DPW; Jay Moyer, Director of DPW; Patrick Hudnall, Administration and Environmental Chief of DPW; King; and Pagenhardt. ECF 1-2 at 12. According to plaintiff, he was told that he "had a bad attitude." *Id.* Additionally, he was told that he "was just a Line Locator" and that he "was not to help other coworkers with problems[.]" When plaintiff asked "why [he] was being demoted", Shoemaker replied that the County was "trying to help [Niner] out because of [his] hand." *Id.* In response, plaintiff said his "hand had never been an issue in the past several years and that [he] had been completing [his] duties as a Line Locator/Crew Leader." *Id.*

Plaintiff was on vacation on Friday, July 10, 2015, attending a "car show" in Carlisle, Pennsylvania with his son and some of his son's friends, celebrating his son's birthday. ECF 1-2 at 6-9 (two statements of fact dated July 26, 2015, addressed to Betty Wolford and Adam Rounds, employees of the "Civil Service Board", as well as to the Garrett County Board of Commissioners) at 6. According to plaintiff, King had approved the vacation time. *Id.*

On that date, King called Niner on his work phone. ECF 1-2 at 6-7. According to Niner, the phone was "on speaker at that time", enabling his son to hear the conversation. *Id.* King asked when plaintiff "was coming home", and also asked if plaintiff would "cover Travis's [client] call because nobody wants to volunteer." *Id.*; *see* ECF 1-2 at 10 (Charge of Discrimination, dated July 4, 2016) (identifying the call as a "client" call). According to plaintiff, he "cut [his] vacation short" and returned to Garrett County on the evening of July 10,

2015, in order to complete the client call later that weekend.  ECF 1-2 at 6.

The following day, Saturday, July 11, 2015, Niner called King to ask whether he (Niner) would be paid for time spent making the client call.  *Id.*  According to Niner, King "said no", to which Niner said, *id.* at 6: "I don't think I'm going to do it."  King asked Niner to find a replacement DPW employee to make the call.  *Id.*  Niner responded, saying he "was not allowed to tell other employees what to do."  *Id.*  He then said "goodbye", ending the phone call with King.  *Id.*  Niner acknowledges that he "was very upset at that point."  *Id.*  But, according to Niner, on Sunday July 12, 2015, he decided to complete the client call, as King had asked him to do, without pay and while he was on approved vacation time.  ECF 1-2 at 6-7; *see also* ECF 1-2 at 2-5 (Unemployment Insurance Appeals Decision, dated September 17, 2015) at 2.

Plaintiff was terminated on July 14, 2015.  ECF 1-2 at 2.  The County appears to have terminated Niner on the ground that he "refused to perform his job duties" and used "profanity" while speaking with King on July 10, 2015, and/or July 11, 2015.  *Id.* at 3.  Niner maintains that he "did not use foul language" during his conversation with King.  ECF 1-2 at 6.  Moreover, Niner's son "overheard the conversation between [Niner] and Mr. King", and stated that Niner "did not use profanity."  *Id.* at 3.

Niner sought State unemployment insurance benefits after he was terminated in July 2015.  *See* ECF 1-2 at 2-5.  The County opposed his request, arguing that Niner had been terminated for "misconduct" that disqualified him from receiving unemployment benefits, pursuant to Md. Code (2016 Repl. Vol., 2017 Supp.), § 8-1003 of the Labor & Employment Article.  *See* ECF 1-2 at 3.  The Division of Appeals within the Maryland Department of Labor, Licensing and Regulation issued a Decision (*id.* at 2-5), concluding that the County "provided insufficient evidence to prove that [Niner] refused to perform his job duties [or] that profanity

-6-

was used, in violation of the employer's rules." ECF 1-2 at 3. Niner was therefore deemed "eligible for benefits . . . ." *Id.* at 4.

Plaintiff notes that he was employed by DPW for nearly twenty-nine years before he was terminated. ECF 1-2 at 8. Indeed, he had worked at DPW "longer than any other employee[.]" *Id.* During that time, Niner "never had to sign any form for any wrong doing." *Id.* Nor had he "received any [such] paperwork." *Id.* Moreover, he had never "received any bad evaluations until Brian King became supervisor[.]" *Id.*

**B.**

On January 4, 2016, Niner filed a Charge of Discrimination ("Charge") with the Maryland Commission on Civil Rights (the "Commission"), naming "Garrett Co. Public Works" as the respondent. *See* ECF 1-2 at 10.[5] Niner supplemented the Charge with a "Statement of Facts." *Id.* at 11-12. He claimed that he had been discriminated against based on his age and his disability. ECF 1-2 at 16. Niner also alleged that he had suffered retaliation. *Id.* Plaintiff stated that the "latest" date on which discrimination took place was July 14, 2015. *Id.*

In the "particulars" of the Charge, plaintiff stated, *id.*:

I began working with Garrett Co. Public Works – Utility Division on April 22, 1987, as a labor[er] and [was] later promoted to equipment operator.

I was injured on the job on November 4, 1993, when I was lifting up a heavy metal tank with a piece of equipment. The chain holding the tank wrapped around my wrist and crushed it. I received surgery on my wrist on February 20, 2001 and in September of 2012, received a disability rating of 54% loss of use of the right hand. I continued to work with the following restrictions: no vibrating, no shoveling, and no lifting over 30 lbs., reduced at times to no lifting over 20 lbs.

---

[5] The Commission was previously known as the Maryland Commission on Human Relations. During the 2011 legislative session, the Maryland General Assembly approved a change in the name; it is now known as the Commission on Civil Rights. *See* 2011 Md. Laws, Chap. 580; *see also Bd. of Directors of Cameron Grove Condo., II v. State Comm'n on Human Relations*, 431 Md. 61, 64 n.3, 63 A.3d 1064, 1066 n.3 (2013).

Spring of 2014, a new supervisor was appointed.

February 11, 2015, I had my routine physician visit and provided my restrictions to the employer.

March 2, 2015, I had to see a company doctor.

July 10-13, 2015, I was on vacation and [was] asked to contact a coworker [about a client call]. I asked to be paid for my time and was informed that I would not be paid. I contacted the client anyway.

On July 14, 2015, I was terminated for violating numerous rules and regulations and violating policy.

The Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights letter on July 21, 2017. *See* ECF 1-2 at 1 (the "EEOC Letter"). The EEOC Letter notified plaintiff that a "lawsuit **must be filed WITHIN 90 DAYS of [his] receipt of this notice**; or [his] right to sue based on this charge will be lost." *Id.*

On October 6, 2017, Niner filed his employment discrimination suit against "Garrett County Public Works." He alleges that his demotion on March 19, 2015, from Line Locator/Crew Leader to Line Locator, and his termination on July 14, 2015, amounted to discrimination, in violation of the ADA and the ADEA. *See* ECF 1 at 4-6. Additionally, plaintiff avers that the medical appointment with Doctor Deren on March 2, 2015, constituted "unequal terms and conditions of [his] employment," in violation of the ADA. *Id.* at 5-6. Further, plaintiff contends that he was demoted to Line Locator in "retaliation" for providing DPW with a "letter" from Doctor Alvarez (on an unspecified date), describing plaintiff's work restrictions. *Id.* at 5-6. Niner seeks back pay from the date of his termination, accrued vacation time and sick days, and retirement benefits that he "would have been entitled to but for [his] wrongful termination." *Id.* at 7.

The Motion seeks to dismiss the Complaint on multiple grounds, including: (1) that the

Garrett County Department of Public Works is not an entity subject to suit; (2) the claim of retaliation, and the claim of unequal terms and conditions of employment, are time barred because they are grounded in allegations pertaining to events prior to March 10, 2015, the relevant date for the applicable limitations period; (3) plaintiff has failed to state a claim of employment discrimination under the ADA or the ADEA; and (4) plaintiff has failed to state a claim of retaliation under the ADA. *See* ECF 8-1 at 5-15.

Additional facts are included in the Discussion.

## II.     Standard of Review

### A.

Defendant's Motion is predicated, in part, on Rule 12(b)(1).  Under Fed. R. Civ. P. 12(b)(1), plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Failure to satisfy administrative remedies may give rise to a challenge to a federal court's subject matter jurisdiction.  *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 786 (D. Md. 2013).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter

jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans*, 166 F.3d at 647.

The County brings a factual challenge because it argues that Niner failed to exhaust his administrative remedies and untimely filed his Charge with regard to the ADA claims of retaliation and unequal terms and conditions of employment. *See* ECF 8-1 at 7, 12-13. A court may take judicial notice of the existence and contents of EEOC proceedings "if necessary to decide issues like exhaustion of administrative remedies[.]" *Clarke*, 962 F. Supp. 2d at 787. But, "it may not take judicial notice of the *truth* of matters outside the challenged pleading." *Id.* (emphasis in *Clarke*).

## B.

### 1.

As noted, defendant has moved to dismiss or, in the alternative, for summary judgment. ECF 8. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur, and the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed.) (hereinafter, "WRIGHT & MILLER"). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain*

*Names*, 302 F.3d 214, 244 (4th Cir. 2002) (hereinafter, "*Harrods*") (quoting *Evans v. Tech's. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, [he] cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll*., 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561. But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on

a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).

The failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," when the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit'", and if the nonmoving party "was not lax in pursuing discovery." *Harrods*, 302 F.3d at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Although Niner did not file a Rule 56(d) affidavit or declaration, he asserts in his Opposition that he intends to call witnesses, including "former coworkers, [and] a former supervisor," to testify as to whether plaintiff was meeting his former employer's reasonable expectations at the time of his demotion and termination. *See* ECF 10 at 1. And, he asks the Court to allow him to "pursue this [issue] in court." *Id.* at 2. Construing plaintiff's Opposition liberally, as I must, I am satisfied that he has identified evidence he seeks to develop and present at trial. *See Sause*, 138 S. Ct. at 2563; *Erickson*, 551 U.S. at 94; *White*, 886 F.2d at 722-23.

Moreover, defendant has provided no explanation as to why pre-discovery summary judgment would be appropriate in the case *sub judice*. Indeed, the Motion offers no analysis under Fed. R. Civ. P. 56. As the Fourth Circuit stated in *McCray*, 741 F.3d at 483, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

In my view, plaintiff is entitled to conduct reasonably discovery. Therefore, I decline to

convert the Motion to one for summary judgment. Instead, I shall construe the Motion under Fed. R. Civ. P. 12(b)(6).

**2.**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss, under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014)

(per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243

(quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'"* *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir.2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004).

To be "integral," a document must be one "that by its 'very existence, *and not the mere*

*information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

Niner submitted several exhibits with his Complaint. *See* ECF 1-2 at 1 (EEOC Letter dated July 21, 2017); *id.* at 2-5 (Unemployment Insurance Appeals Decision dated September 17, 2015); *id.* at 6-9 (two statements of fact dated July 26, 2015, written by Niner and addressed to Wolford, Rounds, and the Garrett County Board of Commissioners); *id.* at 10 (Charge, dated

January 4, 2016); *id.* at 11-12 (statement of facts). Because these exhibits were submitted with the suit, I may consider them without converting the Motion to one for summary judgment.

Additionally, the County submitted exhibits with the Motion. These include ECF 8-2 (Declaration of Davina Griffith, Director of Human Resources for the Board of County Commissioners of Garrett County, dated November 29, 2017); ECF 8-4 (Declaration of Jay Moyer, Director of DPW, dated November 30, 2017). These exhibits are not integral to the suit. *See Chesapeake Bay Found., Inc*, 794 F. Supp. 2d at 611. Therefore, I shall not consider them in regard to resolving the Motion.

However, the County also submitted an Employee Performance Appraisal form pertaining to Niner's DPW performance between October 1, 2013, and September 30, 2014. *See* ECF 8-3 (Hereinafter, the "Evaluation"). In his suit, Niner discusses the Evaluation and its contents. *See, e.g.*, ECF 1-2 at 8 ("I have never received any bad evaluations until Brian King became supervisor."); *id.* at 12 ("I noticed on the evaluation that my title had changed from Crew Leader/Line Locator to just Line Locator only. When I asked King if I was a Crew Leader, he replied 'I don't know.'"). In my view, plaintiff has incorporated the Evaluation into his suit. Therefore, I may consider the Evaluation docketed at ECF 8-3, without converting the Motion to one for summary judgment.

Niner submitted additional exhibits with his Opposition. *See* ECF 10-1 at 3 (a note written by Doctor Alvarez on February 11, 2015, as to plaintiff's medical accommodations); *id.* at 4 (resubmission of the final page of the Evaluation); *id.* at 5-11 (notes written by several medical doctors between November 14, 2006, and January 9, 2015, as to medical accommodations pertaining to DPW employee Parker); *id.* at 12-13 (official DPW job description for Line Locator/Inspector, dated March 19, 2015); *id.* at 14-17 (a duplicate of the

Unemployment Insurance Appeals Decision of September 17, 2015, which was submitted with the Complaint); *id.* at 18-21 (a document pertaining to an Unemployment Insurance Telephone Hearing scheduled for September 4, 2015).

Because the Unemployment Insurance Appeals Decision submitted with the Opposition (ECF 10-1 at 14-17) is a duplicate of an exhibit submitted with the Complaint (ECF 1-2 at 2-5), I shall cite to the copy submitted with the Complaint. And, because it was submitted with Complaint (ECF 1-2 at 2-5), I may consider it without converting the Motion to one for summary judgment. *See, e.g.*, *Goines*, 822 F.3d at 166. However, the other exhibits submitted with the Opposition are not duplicates of exhibits submitted with the Complaint. Nor do they, by their mere existence, give rise to Niner's claims of discrimination and retaliation. Accordingly, I shall not consider them in the context of this Memorandum Opinion.

### III.    Discussion

### A.  DPW as Defendant

The County argues: "No law confers upon DPW the capacity to sue or be sued." ECF 8-1 at 6. Therefore, the County contends that DPW is not "a proper defendant," and it asks the Court to dismiss the Complaint on that basis. *Id.* Niner does not address the issue in his Opposition. *See* ECF 10.

Judges of this Court have recognized that a department within a Maryland county government, or a department within another form of local government, may not sue or be sued. *See Johnson v. Mayor & City Council of Balt. City*, RDB-10-0514, 2011 WL 4351516, at *3 (D. Md. Sept. 15, 2011); *Strebeck v. Balt. Cty. Police Dep't*, JFM-05-2580, 2005 WL 2897932, at *1 (D. Md. Oct. 17, 2005); *James v. Frederick Cty. Pub. Sch.*, 441 F. Supp. 2d 755, 758 (D. Md. 2006); *Adams v. Calvert Cty. Pub. Sch.*, 201 F. Supp. 2d 516, 520 n.3 (D. Md. 2002). Here,

plaintiff has sued his former employer, "Garrett County Public Works." ECF 1. As a department within the County's government, DPW is not a proper defendant.

Pursuant to Md. Code (2013 Repl. Vol., 2017 Supp.), § 9-302(a)(2)(iv) of the Local Government Article ("L.G."), Garrett County is classified as a "Code County." In such counties, "county commissioners may sue or be sued." L.G. § 9-404(b). Accordingly, the proper defendant to this litigation is the Garrett County Board of Commissioners. *See id.*; *see also* Garrett Cty., Md., Code of Ordinances ch. 30 (2005) (describing powers of the Garret County Board of Commissioners as the governing authority of the County).

Fed. R. Civ. P. 21 provides, in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." The decision whether to add or remove a party "lies in the discretion of the judge." C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1688 (3d ed.) ("WRIGHT & MILLER").

To avoid the waste of time and resources that would follow from granting plaintiff leave to amend the suit merely to substitute the proper defendant, I shall substitute the Garrett County Board of Commissioners as the defendant in this litigation, in lieu of DPW. *See Strebeck*, 2005 WL 2897932, at *1. In this regard, I note that the County is already on notice of plaintiff's suit (*see, e.g.* ECF 8), and has already responded to the merits of it (*id.*). Therefore, I am unable to discern any prejudice arising from the substitution of defendants.

### B. Timeliness of Plaintiff's Claims

As noted, defendant challenges as untimely Niner's claim of unequal terms and conditions of employment, and his claim of retaliation. ECF 8-1 at 7, 12-13. Both claims appear to be predicated on the ADA. *See* ECF 1.

With regard to timely initiating claims of employment discrimination pursuant to the ADA or the ADEA, an aggrieved person must file a charge with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the limitations period is 300 days. 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA) (incorporating the filing requirements set forth in 42 U.S.C. § 2000e-5(e)(1)); *see Jones v. Southpeak Interactive Corp. of De.*, 777 F.3d 658, 670 (4th Cir. 2015); *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002).

Notably, Maryland is a deferral state. Accordingly, to timely lodge a claim of discrimination based on the ADA or the ADEA, a plaintiff in Maryland must file a charge within 300 days of the alleged discrimination.

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus.*, Inc., 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor*, 681 F.3d at 593.

An aggrieved party who fails to comply with the applicable Commission procedures has failed to exhaust his administrative remedies, and is generally barred from filing suit. *See, e.g.*, *Balas*, 711 F.3d at 406; *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124,

132 (4th Cir. 2002). Indeed, failure to comply ordinarily mandates dismissal of the suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Moreover, even when a plaintiff has timely filed a claim, a court cannot consider matters that were not properly raised during the agency process. To determine whether a plaintiff has properly alleged a claim in a manner satisfying administrative requirements, courts "may look only to the charge filed with that agency." *Balas*, 711 F.3d at 408; *see also Chacko.*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Tech.'s Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). Although courts "recognize that EEOC [and Commission] charges often are not completed by lawyers and as such must be construed with utmost liberality courts are not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'" *Id*. at 407-08 (citations omitted).

"The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, 681 F.3d at 594: "[A]n administrative charge of discrimination does not strictly limit a . . . suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her . . . charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *See also Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Evans*, 80 F.3d at 963.

As noted, plaintiff filed his Charge with the Commission on January 4, 2016. *See* ECF 1-2 at 10. Therefore, any claim pertaining to events that occurred on or before March 9, 2015, is not timely. *See Dewitt v. Clean Harbors Envt'l Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017).

As indicated, plaintiff avers that his appointment with Doctor Deren on March 2, 2015, constituted "unequal terms and conditions of [his] employment", because DPW never instructed Parker, Niner's colleague with a similar disability, to meet with Deren. ECF 1 at 5-6; *see* ECF 1-2 at 10. Because the appointment with Doctor Deren predates the applicable limitations period, Niner's claim of unequal terms and conditions of employment is time barred. That claim is therefore subject to dismissal.

Additionally, Niner alleges that his demotion from Line Locator/Crew Leader to Line Locator amounted to discrimination based on age and disability. *See* ECF 1 at 4-6. He contends the demotion occurred on March 19, 2015, when he was informed that he was no longer a Crew Leader. *See id.*; *see also* ECF 1-2 at 12. Further, plaintiff maintains that the demotion on that date was in retaliation for a physician's letter he provided to DPW regarding his disability accommodations. *Id.* at 6. Based on the Charge and Complaint, plaintiff regularly provided DPW with a physician's letter regarding his disability and need for accommodations, including on February 11, 2015. *See* ECF 1-2 at 10, 12.

There is some confusion as to when exactly Niner was demoted. As noted, plaintiff contends he was demoted on March 19, 2015, when he met with Shoemaker, Moyer, Hudnall, King, and Pagenhardt, and was told he "was just a Line Locator." ECF 1-2 at 12. However, plaintiff also avers that he received an "employment evaluation" from King on an unspecified day in February 2015, indicating plaintiff's "title had changed from Crew Leader/Line Locator to

just Line Locator[.]" ECF 1-2 at 12. But, when plaintiff asked King on that date if he (plaintiff) was still a Crew Leader, King responded: "'I don't know.'" *Id.* And, when plaintiff met with Pagenhardt on February 26, 2015, to discuss, *inter alia*, plaintiff's change in job title, Pagenhardt allegedly told plaintiff that his "personnel file . . . still indicated that [plaintiff] was a Crew Leader." *Id.*

Defendant contends that Niner's "job title changed . . . in 2013" and that plaintiff "was aware of that change . . . no later than November 24, 2014." ECF 8-1 at 13. Therefore, defendant argues that any claim of discrimination arising from plaintiff's demotion is time barred. *Id.* Niner's Complaint makes no mention of a demotion in 2013 or November of 2014. Defendant's argument amounts to a dispute of facts. And, courts do not resolve factual disputes in the context of a Rule 12(b)(6) motion.

Assuming the truth of plaintiff's allegations, and drawing all reasonable inferences in his favor, as I must, it appears that plaintiff was demoted, and became aware of his demotion, on March 19, 2015. That date is within the limitations period. Accordingly, plaintiff's claims of discrimination and retaliation based on his demotion on March 19, 2015, are timely. However, to the extent plaintiff alleges discrimination and/or retaliation based on the "employment evaluation" of February 2015, those claims are time barred.

Further, plaintiff contends that his termination on July 14, 2015, amounted to discrimination based on age and disability. *See* ECF 1 at 4-6. That date falls squarely within the limitations period. Accordingly, the claims of discrimination related to Niner's termination are timely.

In sum, plaintiff's claim of unequal terms and conditions of employment is time barred. All other claims are timely.

## C. The Claims of Discrimination

In general, there are "two avenues" *at trial* by which a plaintiff may prove intentional employment discrimination, including under the ADA and the ADEA. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc); *see, e.g.*, *Ullrich v. CEXEC, Inc.*, 709 F. App'x 750, 753 (4th Cir. 2017) (citing *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc)). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, ___ U.S. ___, 135 S. Ct. 1338, 1345 (2015) (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the three steps of the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the

plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (hereinafter, "*Burdine*").

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995))

(emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, these approaches merely serve to inform a court's evaluation of the allegations. *Cf. Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").[6]

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that

---

[6] When an employer demonstrates a legitimate reason for an adverse employment action, the Fourth Circuit has assumed, without deciding, that the plaintiff established a prima facie case, and considers whether the employee can demonstrate pretext for discrimination. *See*, *e.g.*, *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008). Here, the Motion does not provide a legitimate basis for Niner's termination or demotion. Accordingly, I cannot assume that Niner established a prima facie case.

the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal* and *Twombly*. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies . . . ." Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Commissioners*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

## 1. The ADA — Discrimination and Retaliation Based on Disability

As noted, Niner alleges that his demotion and termination were the product of discrimination based on his disability. ECF 1. Additionally, he contends that he was demoted in retaliation for providing DPW with a physician's letter concerning his need for accommodations. *Id.* Defendant argues that plaintiff failed to allege facts sufficient to state a prima facie claim of discrimination based on disability. *See* ECF 8-1 at 9-12. Additionally, defendant contends that plaintiff failed to allege a prima facie claim of retaliation under the ADA. *Id.* at 13-15.

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." § 12101(b)(2). The ADA "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I of the ADA, *see* 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131–12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182–12189." *A Helping Hand, LLC v. Balt. Cty., Md.,* 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).

Niner avers that DPW demoted him, and ultimately terminated his employment, based on his known disability. ECF 1. Accordingly, Niner's claim of employment discrimination arises under Title I of the ADA. *See* 42 U.S.C. §§ 12111–12117. Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it

unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'").

A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." § 12102(1).

Unlawful discrimination under Title I of the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. . . .'" *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 344 (4th Cir. 2013) (quoting § 12112(b)(5)(A)). Additionally, "[t]he Act prohibits covered employers from discharging qualified employees because they are disabled." *Summers,* 740 F.3d at 328. Moreover, "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability" may qualify as "discrimination against a qualified individual on the basis of disability." § 12112(b)(5)(B).

As to retaliation, the ADA states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

To establish a prima facie case of wrongful demotion or discharge under the ADA, a plaintiff must show that (1) he is within the ADA's protected class; (2) he was subject to an adverse employment action; (3) at the time of the adverse employment action, he was performing

the job at a level that met the legitimate expectations of his employer; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.  *See Wilson*, 717 F.3d at 346-47; *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 947 (4th Cir. 2013) (per curiam); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001); *see also Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).  "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  *Holland*, 487 F.3d at 219.  Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."  *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999); *see Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 513 (4th Cir. 2006).

To establish a prima facie case of retaliation, a plaintiff "must show (1) that he engaged in protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the adverse activity and the protected action."  *Haulbrook*, 252 F.3d at 706; *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 578 (4th Cir. 2015) (same).  The Fourth Circuit recently clarified in *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 n.3 (4th Cir. 2018), a Title VII case, that an "adverse *employment* action" is not the standard in a retaliation case.  (Emphasis added).  The adverse action "need not be employment or workplace-relate in order to sustain a retaliation claim."  *Id.*  Notably, requesting a workplace accommodation based on one's disability is a protected activity under the ADA.  *See Haulbrook*, 252 F.3d at 706; *see also Sillah v. Burwell*, 244 F. Supp. 3d 499, 513 (D. Md. 2017).

As indicated, a plaintiff need only put forth sufficient facts to "state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570.  In *McCleary-Evans*, 780 F.3d 582, the

Fourth Circuit said, *id.* at 584: "[R]equiring a plaintiff to plead a prima facie case would amount to a 'heightened pleading standard' that would conflict with Federal Rule of Civil Procedure 8(a)(2)." (Citation omitted). Accordingly, "'the ordinary rules for assessing the sufficiency of a complaint apply'" to employment discrimination suits. *Id.* at 585 (citation omitted). Nevertheless, the elements of a prima facie case are a helpful guide in assessing the adequacy of the allegations.

It appears that plaintiff's claim of disability is rooted in his 1993 work-related injury to his right hand and wrist. *See* ECF 1-2 at 11. In particular, plaintiff contends his right wrist was crushed when it became wrapped in a chain used to lift a "heavy metal tank." *Id.* As a result of the injury, Niner submitted numerous letters from Doctor Alvarez, describing the workplace accommodations needed by plaintiff because of his disability. *Id.* Niner was unable to shovel, expose his right wrist to vibrations, or use his right hand to lift objects weighing more than 20 or 30 pounds. *Id.* Niner provided DPW with such a letter on or around February 11, 2015. *Id.* at 12. Further, plaintiff alleged his "hand had never been an issue . . . and that [he] had been completing [his] duties as a Line Locator/Crew Leader." *Id.*

In my view, plaintiff has alleged facts sufficient to show he was a "qualified individual" within the meaning of the ADA. *See* 42 U.S.C. §§ 12111(8); § 12102(1). And, by providing DPW with Doctor Alvarez's letters, plaintiff repeatedly requested workplace accommodations, thereby engaging in protected activity within the meaning of the ADA. *See also Haulbrook*, 252 F.3d at 706; *Sillah*, 244 F. Supp. 3d at 513.

As indicated, plaintiff alleges he was demoted from the position of Crew Leader/Line Locator to merely Line Locator on March 19, 2015, and that he was terminated on July 14, 2015. *See* ECF 1-2 at 2-3, 12. It is undisputed that Niner's termination constituted an adverse

employment action. *See* ECF 8; *see also Holland*, 487 F.3d at 219; *Boone,* 178 F.3d at 255; *Warch,* 435 F.3d at 513. However, defendant contends the demotion does not constitute an adverse action because Niner failed to allege "how the alleged demotion affected a term, benefit or condition of his employment." ECF 8-1 at 15. Yet, defendant ignores that Niner alleges to have lost his supervisory responsibilities as a result of the demotion. *See* ECF 1-2 at 6, 12. As the Court said in *Boone,* 178 F.3d at 255, loss of supervisory responsibility may constitute an adverse action. In my view, plaintiff has alleged facts sufficient to show that his demotion constituted an adverse action.

Further, plaintiff states that he never received any formal reprimand during nearly twenty-nine years of employment at DPW. ECF 1-2 at 8. And, until King became his supervisor in the "spring of 2014", plaintiff had "never received any bad evaluations." *Id.* On an unspecified date in 2013, prior to King becoming Niner's supervisor, Niner received the Locator Achievement Award, which recognized "the best partners in damage prevention" and required, *inter alia*, that plaintiff "have ZERO 'at fault' damages" and "ZERO safety violations." *Id.* at 11-12. Moreover, the Unemployment Insurance Appeals Decision of September 17, 2015, indicates that plaintiff's termination was unrelated to any misconduct, dereliction of duty, or violation of DPW employment rules. *See* ECF 1-2 at 2-4. And, plaintiff avers that his disability did not prevent him from completing the tasks of his job. *See* ECF 1-2 at 12. Accordingly, I am satisfied that plaintiff has alleged facts sufficient to show that he was meeting the legitimate expectations of his employer at the times of his demotion and termination.

Niner alleges that defendant's justification for his demotion on March 19, 2015, was that defendant was "trying to help [Niner] out because of [his] hand." ECF 1-2 at 12. In addition, Niner alleges that he was terminated after King asked plaintiff to work without compensation

during plaintiff's approved vacation time. *Id.* at 2-10. According to the Unemployment Insurance Appeals Decision of September 17, 2015, DPW terminated plaintiff because, *inter alia*, he "refused to perform his job duties" when he spoke with King on July 10, 2015, and/or July 11, 2015. *Id.* at 3. However, Niner avers that he completed King's work request on July 12, 2015, although he was on vacation and was told he would not be paid for the task. *Id.* at 2, 6. In my view, Niner has alleged facts sufficient to create the plausible inference that he was demoted and terminated because of his disability.

Therefore, I shall deny defendant's Motion as to Niner's ADA claims of discrimination and retaliation, predicated on the demotion of March 19, 2015, and the termination of July 14, 2015.

### 2. The ADEA

The ADEA "'broadly prohibits arbitrary discrimination in the workplace based on age.'" *Trans World Airlines, Inc.*, 469 U.S. at 120 (quoting *Lorillard v. Pons*, 434 U.S. 575, 577 (1978)); *see also McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995). It protects individuals 40 years of age or older. *See* 29 U.S.C. § 631(a); *Bodkin v. Town of Strasburg, Va.*, 386 F. App'x 411, 413-14 (4th Cir. 2010) (per curiam). The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a); *see also Hartman v. Univ. of Md. at Balt.,* 595 F. App'x 179, 181 (4th Cir. 2014) (per curiam); *Calvert Grp., Ltd.*, 551 F.3d at 300.

To plead adequately a claim of employment discrimination under the ADEA, a plaintiff typically must allege: "(1) he is a member of a protected class—that is, 40 years or older; (2) he

suffered an adverse employment action; (3) he was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or he was replaced by a substantially younger person." *Bodkin*, 386 F. App'x at 413-14 (citations omitted) (alterations in *Bodkin*); *see also* 29 U.S.C. § 623(a). As indicated, an adverse employment action may be found in a case of discharge, demotion, a decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion. *See Holland,* 487 F.3d at 219; *Warch,* 435 F.3d at 513; *Boone,* 178 F.3d at 255.

Of import, a plaintiff bringing a discrimination claim under the ADEA must allege that "age was not merely a motivating factor of the challenged adverse employment action but was in fact its 'but-for' cause." *Hartman*, 595 F. App'x at 181 (citing *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013), and *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)).

As explained, *supra*, Niner has alleged facts sufficient to show that his demotion and termination constituted adverse actions, and they occurred at a time when he was meeting DPW's legitimate expectations. *See, e.g.*, ECF 1-2 at 2-4, 6, 8, 11-12. Nevertheless, the County points out that Niner has failed to allege any facts suggesting his position remained vacant or that he was replaced by a substantially younger person. ECF 8-1 at 8-9. But, Niner need not plead a prima facie case at this stage of the litigation. *See Swierkiewicz*, 534 U.S. at 511. Rather, he must plausibly allege that he was demoted and terminated because of his age. *See Gross*, 557 U.S. at 168; *see also McCleary-Evans*, 780 F.3d at 584-85.

Niner has alleged that he was forty-eight years of age when he was terminated in July 2015. ECF 1 at 6. He has also alleged that he was employed at DPW for nearly twenty-nine years—longer than any other employee at that time. ECF 1-2 at 8. Moreover, King wrote a

statement in Niner's Evaluation (ECF 8-3) from which a fact finder could infer that King perceived Niner's age to be an impediment to Niner's effectiveness at work. In particular, King stated that Niner has "knowledge with our older systems," but King "would like to see [Niner] gain greater knowledge of our newer Water and Wastewater Systems . . . ." *Id.* at 2, 5.

At this juncture, Niner must only allege facts sufficient to state a plausible claim. In my view, Niner has plausibly alleged that King believed Niner's age was an impediment to Niner's performance. And, it is undisputed that Niner was terminated. Accordingly, I shall deny the Motion as to plaintiff's ADEA claim.

## IV. Conclusion

For the foregoing reasons, I shall grant the Motion in part and deny it in part. In particular, I shall grant the Motion as to the ADA claim of unequal terms and conditions of employment, as untimely. But, I shall deny the Motion as to the ADA claim of retaliation, the ADA claim of disability discrimination, and the ADEA claim of age discrimination.

An Order follows.

Date: August 15, 2018
_____/s/_____
Ellen Lipton Hollander
United States District Judge